USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/29/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALEX REIFF,

                Plaintiff,

    - against -

CYBERRISK ALLIANCE, LLC,

                Defendant.

**25 CV 6351(VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

In this employment action, plaintiff Alex Reiff ("Reiff") seeks a declaratory judgment establishing that certain restrictive covenants in his employment contract with defendant CyberRisk Alliance, LLC ("CRA") are void and unenforceable. (See "Complaint" or "Compl.," Dkt. No. 1 ¶¶ 31-37.) Reiff additionally alleges violations of the New York Labor Law ("NYLL") and breach of contract and – in the alternative – pleads quantum meruit, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (See id. ¶¶ 38-58.) Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), CRA now moves to dismiss (see "MTD," Dkt. No. 17) Reiff's breach of contract claim (Count III) and his alternative causes of action (Counts IV, V, and VI). For the reasons set forth below, CRA's motion is **GRANTED**.

1

I.  **BACKGROUND**[1]

Reiff worked at CRA and its predecessor company from 2012 until he was terminated without cause on May 27, 2025. (See Compl. ¶ 7.) CRA is a business that organizes conferences and other events to bring together cybersecurity companies and potential customers. (See id. ¶ 8.) Reiff worked as a senior-level sales manager and spearheaded CRA's Cyber Security Summit (the "Summit"), an annual gathering of executives and vendors in the industry. (See id. ¶ 10.) In that role, Reiff recruited cybersecurity companies to sponsor the Summit, as well as other conferences, dinners, and events. (See id.)

On May 8, 2025, Reiff signed a compensation plan, effective January 1 of that same year. (See "Plan," Dkt. No. 6-5 at 2.) The Plan includes details outlining Reiff's base salary and his commissions, which were to be determined "based on the amount and value of booth space he sold [for the Summit] and other cyber security conferences and events." (See Compl. ¶ 11.) The Plan provides that a "[c]ommission is considered earned and payable only if (i) revenue has been

---

[1] Except as otherwise noted, the following background derives from Reiff's Complaint. (See Dkt. No. 1.) The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Reiff, as required under the standard set forth in Section II below.

earned; [and] (ii) the salesperson is an active employee on the date that the commission is to be paid." (Plan at 1.) Revenue is "deemed earned" when (i) "[t]he sale order is signed and entered . . . and billed according to company policy, and the program or product has been delivered"; (ii) "[t]he customer payment is not subject to chargebacks, refunds, or any other deductions"; and (iii) "[t]he product or service sold has not been canceled by the customer." (Id. at 1-2.) The "Rights Upon Termination or Resignation" section of the Plan also provides that "[i]n the event of termination of employment with or without cause, . . . the salesperson shall be entitled to receive those commissions earned. . . . [But the] [s]alesperson must be an active employee and in good standing through the customary payment date to be eligible [f]or any commission amount." (Id. at 2.) Under the Plan, commissions are paid "the last business day of the following month." (Id. at 1.)

That same month – on May 27, 2025 – CRA terminated Reiff without cause. (See Compl. ¶ 13.) Reiff alleges that up to that date, approximately $220,000 in revenue was "deemed earned" and thus he is entitled to $220,000 in commissions, which CRA has not paid. (Id. ¶ 13.)

On August 1, 2025, Reiff filed the Complaint in this action. (See Complaint.) On August 22 and 30, 2025, the parties exchanged pre-motion letters pursuant to this Court's Individual Practices. (See MTD; "Reply," Dkt. No. 17.) On September 22, 2025, the parties consented to the Court deeming the pre-motion letters as a fully briefed motion to dismiss. (See Dkt. No. 31.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations but [must] accept as true the factual allegations of the complaint and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (cleaned up); see Iqbal, 556 U.S. at 678. In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Doe v. N.Y. University, No. 20-CV-1343, 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (citation omitted).

### III. DISCUSSION

A.   Count III: Breach of Contract

First, the Court finds that Reiff cannot sustain his breach of contract claim. "In a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreement." Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). Where a contract is "unambiguous on its face, its proper construction is a question of law." Id. at 889; see also PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir.

1996) ("[W]here the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may thus be determined . . . by [a motion to dismiss]." (internal quotations marks and citation omitted)).

When a district court interprets a contract, words and terms are given their plain and ordinary meaning in the absence of contractual ambiguity. See, e.g., Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010); American Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (1st Dep't 1990). A contract is unambiguous where the "language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Law Debenture, 595 F.3d at 467 (internal quotation marks omitted). Although one party may assert a different meaning for a particular term, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations." Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989); see also Sasson v. TLG Acquisition LLC, 9 N.Y.S.3d 2, 4 (1st Dep't 2015).

Here, CRA contends that the express terms of the Plan bar Reiff's breach of contract claim because Reiff did not satisfy the contractual requirements for receipt of the commissions he seeks. (See MTD at 1.) As noted, the Plan provides that a "[c]ommission is considered earned and payable only if (i) revenue has been earned; [and] (ii) the salesperson is an *active employee on the date that the commission is to be paid*." (Plan at 1 (emphasis added).) The "Rights Upon Termination or Resignation" section of the Plan also provides that "[i]n the event of termination of employment with or without cause, . . . the salesperson shall be entitled to receive those commissions earned. . . . [But the] [s]alesperson *must be an active employee and in good standing through the customary payment date* to be eligible [f]or any commission amount." (Id. at 2 (emphasis added).) Under the Plan, commissions are paid "the last business day of the following month." (Id. at 1.) Reiff states that he was terminated without cause on May 27, 2025. (See Compl. ¶ 13.) Because Reiff was not employed on the last business day in May 2025, by the plain terms of the Plan, he is not entitled to commissions earned on or after April 1, 2025 - even if, as he asserts, the revenue conditions were met for approximately $220,000. (See Compl. ¶ 15.)

7

Reiff contends, however, that the clause in the Plan conditioning commission payment upon current employment "violates the NYLL and is void *ab initio*." (Id. ¶ 16.) Reiff argues that if the Court later finds that the contested provision is unenforceable, the Court could "then sever the unenforceable provision, and allow [Reiff] to recover on his breach of contract claim." (Reply at 1.) New York courts have found that "[w]here an agreement consists in part of an unlawful objective and in part of lawful objectives, the court may sever the illegal aspects and enforce the legal ones, so long as the illegal aspects are incidental to the legal aspects and are not the main objective of the agreement." Carruthers v. Flaum, 365 F. Supp. 2d 448, 468 (S.D.N.Y. 2005) (citation omitted). However, where the main objective of an agreement is illegal, courts will not sever and enforce incidental legal clauses. See Donnell v. Stogel, 560 N.Y.S.2d 200, 203-04 (1990); see also McCall v. Frampton, 438 N.Y.S.2d 11, 13 (2d Dep't 1981).

Here, however, the issue of severability arises only if the challenged provision violates the NYLL. Thus, as a threshold matter, the Court must first find that Reiff has sufficiently alleged that the Plan's compensation clause does, in fact, violate the NYLL. In his separate NYLL cause

8

of action (Count II) – which CRA has not moved to dismiss - Reiff asserts that he "earned commissions from his work . . . but was not paid them," the "failure to pay wages was willful," and CRA is liable for "unpaid commission wages, liquidated damages, interest, and attorneys' fees." (Compl. ¶¶ 39-41.) As noted, Reiff makes only one specific mention of the NYLL elsewhere in his Complaint, stating that the clause in the Plan conditioning commission payment upon current employment "violates the NYLL and is void *ab initio*." (Id. ¶ 16.)

While those allegations might sufficiently state a claim that CRA's actions violate the NYLL, they are too conclusory to support a breach of contract claim. At a minimum, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." Twombly, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.,*] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." Id. at 679. Here, Reiff does not allege in his Complaint, or even specify in his Reply, the specific provision of the NYLL the challenged clause allegedly violates. (See generally id.; see generally Reply.) The NYLL allegation that the provision "violates the NYLL and is void *ab initio*" coupled with the assertion that CRA "breached the parties' contract by failing to pay [Reiff] the agreed-upon pay" merely add to "conclusory, factually inadequate claims of breach." (Id. ¶¶ 16, 45); Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017) ("Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim.").

Therefore, the Court finds that Reiff cannot sustain his breach of contract claim.

    B.    <u>Counts IV, V, and VI: Quantum Meruit, Unjust Enrichment, and Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Furthermore, Reiff's alleged alternative causes of action are impermissibly duplicative of the contract claim and are therefore dismissed. Reiff seeks relief under several additional theories of recovery, including quantum meruit (Count IV), unjust enrichment (Count V), and breach of the

10

implied covenant of good faith and fair dealing (Count VI). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 521 N.Y.S.2d 653, 656 (1987); see also City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (2d Cir. 1988) ("[Q]uasi-contractual . . . relief is unavailable where an express contract covers the subject matter."). "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Clark-Fitzpatrick, 521 N.Y.S.2d at 656.

Here, Reiff's claims for quantum meruit and unjust enrichment are based on, and arise out of, a contractual transaction: the Plan. Therefore, Reiff may not seek recovery based on those quasi-contractual theories. See R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997) (finding that claims for quantum meruit and unjust enrichment "are noncontractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter"); SAA-A, Inc. v. Morgan Stanley Dean Witter & Co.,

721 N.Y.S.2d 640, 642 (1st Dep't 2001) ("[W]here there is an express contract no recovery can be had on a theory of implied contract." (internal quotation marks omitted)). An exception to this rule exists, however, in situations "where a bona fide dispute exists as to the existence of a contract." See, e.g., Silber Inv. Props., Ltd. v. BJG Islandia Realty, LLC, 230 N.Y.S.3d 612, 616 (2025). When the plaintiff challenges the validity of the contract, courts have permitted unjust enrichment and quantum meruit claims to proceed alongside a breach of contract claim. See, e.g., Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) ("When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim."); JLO Dev. Corp. v. Amalgamated Bank, 222 N.Y.S.3d 517, 520 (2024) ("Where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quantum meruit as well as contract, and will not be required to elect his or her remedies." (internal quotation marks and citation omitted)). Here, however, Reiff merely asserts that one contractual provision – the clause conditioning his commission payments

upon his current employment status – is void. (See Compl. ¶ 16.) As pleaded, Reiff contends that if the Court finds that clause unenforceable, it should sever the language and "allow [Reiff] to recover on his breach of contract claim." (Reply at 1.) Under Reiff's theory – unchanged by the Court's dismissal of the contract claim - either the entire Plan is enforceable, in which case Reiff would not recover his unpaid commissions, or all but the contested provision is enforceable, in which case Reiff would be able to recoup the damages he asserts. Neither of those two circumstances, however, would support this Court allowing a quasi-contractual theory to proceed. See, e.g., Redwing Constr. Co. v. Sexton, 120 N.Y.S.3d 215, 219 (2020) (dismissing both plaintiff's breach of contract claim and unjust enrichment cause of action); Ferdous v. Hasan, 231 N.Y.S.3d 518, 522 (2025) (same).

   Reiff argues that his claim for breach of the implied covenant of good faith and fair dealing is distinguishable and not duplicative of his contract claim because it is underpinned by a "separate and distinct wrong" – namely, his claim that CRA "fired [him] in order to avoid paying him his commissions." (Reply at 2.) Reiff contends that this allegation is separate because "[f]iring [him] would not give

13

rise to a breach of contract claim based on the [Plan]." (Id.) However, the Court finds that this claim, just as Reiff's other alternative claims, cannot survive. See, e.g., Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

Here, the Court is persuaded by CRA's argument as supported by Tobias v. Notations, Inc., No. 14-CV-08494, 2015 WL 4654454, at *3 (S.D.N.Y. July 20, 2015). In that case, the district court granted the defendant's motion to dismiss the plaintiff's breach of the covenant of good faith and fair dealing claim after plaintiff alleged it was based on her "termination . . . to avoid paying her commissions." Id. The Tobias court found that both claims were premised on the defendant's failure to pay or compensate the plaintiff for all commissions. See id. In the dispute at issue, Reiff's claims are grounded in the same factual allegations that CRA has not paid the commissions he contends he is owed. Thus, Reiff seeks relief that is "intrinsically tied to the damages allegedly resulting from [the] breach of the contract."

Canstar v. J.A. Jones Const. Co., 622 N.Y.S.2d 730, 731 (1995).

Accordingly, Counts IV, V, and VI are duplicative of Reiff's contract claim and are dismissed.

### IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the letter motion (Dkt. No. 17) filed by defendant CyberRisk Alliance, LLC, to partially dismiss plaintiff Alex Reiff's Complaint is **GRANTED**. Counts III, IV, V, and VI of the Complaint are dismissed without prejudice.

**SO ORDERED.**

Dated:    29 October 2025
          New York, New York

Victor Marrero
U.S.D.J.