UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____    │
│ DATE FILED: 10/29/2025           │
└─────────────────────────────────┘
```

ALEX REIFF,

                    Plaintiff,

          - against -

CYBERRISK ALLIANCE, LLC,

                    Defendant.

25 CV 6351(VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Before the Court is plaintiff Alex Reiff's ("Reiff") motion (see "Motion," Dkt. No. 11) for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 ("Rule 65") against CyberRisk Alliance, LLC ("CRA"). Reiff seeks to enjoin CRA from enforcing non-compete and non-solicitation provisions in Reiff's employment contract. For the reasons set forth below, Reiff's motion is **DENIED**.

## I.    BACKGROUND

Reiff worked at CRA and its predecessor company from 2012 until he was terminated without cause on May 27, 2025. (See "Memorandum" or "Mem.," Dkt. No. 7 at 2.) CRA is a business that organizes conferences and other events to bring together cybersecurity companies and potential customers, and additionally provides digitally delivered educational, informational, and advisory services. (See id.) Reiff worked as a senior-level sales manager and spearheaded CRA's Cyber

1

Security Summit (the "Summit"), an annual gathering of executives and vendors in the industry. (See id.) In that role, Reiff recruited cybersecurity companies to sponsor the Summit, as well as other conferences, dinners, and events. (See id.)

In October 2022, CRA acquired two companies through an Asset Purchase Agreement governed by Delaware law. (See id. at 3.) Shortly after the acquisition, Reiff signed an updated Employment Agreement (the "Employment Agreement") and Bonus Agreement (the "Bonus Agreement"), both of which include non-compete and non-solicitation provisions. (See id.; "Emp. Agreement," Dkt. No. 9-1 at 7-12; "Bonus Agreement," Dkt. No. 25-1 at 4-5.) Notably, both agreements also contain a Delaware choice-of-law provision. (See Emp. Agreement at 7; Bonus Agreement at 7.) Pursuant to the Employment Agreement's restrictive covenant, for a period of twelve months upon termination, Reiff cannot:

- "Engage in, accept employment with, work in any office or position with, or provide or perform services to, any Competing Business within the United States, including any work or services wherein Employee could utilize his/her knowledge of the Confidential Information to the detriment of the Company or for any unfair advantage of

Employee or any Competing Business accept employment or any other position with, or provide or perform services on behalf of, any Competing Business within the United States; and/or

- Engage in the sale or marketing of any product or service that competes with CRA; or

- Solicit, contact, provide services to, do business with, or enter into any agreements with any customer of CRA, whether on Employee's own behalf or on behalf of, or as an agent, representative, consultant, contractor or employee of any third-party." (Emp. Agreement at 6-7.)

On May 27, 2025, Reiff was terminated without cause. (See Mem. at 2.) Reiff now seeks a preliminary injunction enjoining CRA from taking any action to enforce the restrictive covenant provisions. (See Motion.)

## II.    LEGAL STANDARD

Rule 65 authorizes federal courts to issue preliminary injunctions. See Fed. R. Civ. P. 65. Preliminary relief "is an extraordinary remedy never awarded as of right." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008). A preliminary injunction preserves the status quo and the rights of the parties until a final adjudication on the

merits. See North American Soccer League, LLC v. United States Soccer Federation, Inc., 883 F.3d 32, 36 (2d Cir. 2018).

A plaintiff seeking a preliminary injunction must establish (1) "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party"; (2) irreparable harm in the absence of an injunction; and (3) that a preliminary injunction is in the public interest . New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) (citation omitted). Under certain circumstances, courts apply a heightened standard, which "requires the movant, in addition to demonstrating irreparable harm, to show that it has a *clear or substantial* likelihood of success on the merits." JLM Couture, Inc. v. Gutman, 91 F.4th 91, 105 (2d Cir. 2024) (internal quotation marks omitted). Courts "have applied this standard to mandatory injunctions, which alter the status quo by commanding some positive act, as well as to injunctions that (1) would provide the plaintiff with all the relief that is sought and (2) could not be undone by a judgment favorable to defendants on the merits at trial." Id. (internal quotation marks omitted).

4

### III. <u>DISCUSSION</u>

Although Reiff establishes a clear or substantial likelihood of success on the merits under Delaware law, he fails to put forward sufficient evidence supporting a compelling finding that he would suffer irreparable harm in the absence of preliminary injunctive relief.

A. <u>Governing Law</u>

As noted, Reiff's Employment Agreement and Bonus Agreement - which include the restrictive covenants - contain Delaware choice-of-law clauses providing that Delaware law applies "without regard to its conflict of law rules." (Emp. Agreement at 7; Bonus Agreement at 7 ("The provisions of this Agreement shall be construed in accordance with the internal laws, but not the law of conflicts of the State of Delaware.").) Nevertheless, Reiff argues that New York law should apply because the Delaware choice-of-law provision violates New York public policy. (<u>See</u> Mem. at 10-14.) CRA argues otherwise. (<u>See</u> "Opposition" or "Opp'n," Dkt. No. 21 at 9-14.)

When undertaking a choice-of-law-analysis, a federal court sitting in diversity jurisdiction applies the choice-of-law principles of the state in which it sits. <u>See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,</u>

230 F.3d 549, 556 (2d Cir. 2000). The Court, therefore, applies New York choice-of-law principles to determine what law applies to Reiff's claim.

"Under New York law, great deference is to be given a contract's designation of the law that is to govern disputes arising from the contract." Zerman v. Ball, 735 F.2d 15, 20 (2d Cir. 1984); see also Int'l Bus. Machines Corp. v. Mueller, No. 14-CV-9221, 2017 WL 4326114, at *4 (S.D.N.Y. 2017). New York courts generally follow the Restatement (Second) of Conflict of Laws. See, e.g., IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A., 20 N.Y.3d 310, 958 (2012). "[C]ourts may refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute." East Capital Invs. Corp. v. GenTech Holdings, Inc., 590 F. Supp. 3d 668, 677 (S.D.N.Y. 2022) (quoting Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006)); see also TGG Ultimate Holdings, Inc. v. Hollett, No. 16-CV-6289, 2017 WL 1019506, at *4 (S.D.N.Y. Feb. 24, 2017) (discussing the Restatement test in determining whether to enforce parties' choice-of-law selection); International Minerals & Res., S.A. v. Pappas, 96

F.3d 586, 592 (2d Cir. 1996) ("New York law is unambiguous in
the area of express choice of law provisions in a
contract. . . . [A]bsent fraud or violation of public policy,
contractual selection of governing law is generally
determinative so long as the State selected has sufficient
contacts with the transaction.") (internal quotation marks
and citation omitted); Medtronic, Inc. v. Walland, No. 21-
CV-2908, 2021 WL 4131657, at *4-6 (S.D.N.Y. Sept. 10, 2022)
(explaining that, even after the New York Court of Appeals'
decision in Ministers & Missionaries Benefit Bd. v. Snow, 25
N.Y.S.3d 21 (2015) - which stated that "New York courts
should not engage in any conflicts analysis where the parties
include a choice-of-law provision in their contract" - a
court should consider whether a choice-of-law provision bears
a reasonable relationship to the parties or transaction or
violates a fundamental policy of a state with a materially
greater interest than the chosen state).

   1. Contacts

 "In assessing whether there is a reasonable
relationship, New York 'courts have looked to the location of
the following factors: the parties' negotiation of the
agreement; performance under the agreement . . .; the
parties' places of incorporation; the parties' principal

places of business; and the property that is the subject of
the transaction.'" Cambridge Cap. LLC v. Ruby Has LLC, 675 F.
Supp. 3d 363, 420 (S.D.N.Y. 2023) (quoting Madden v. Midland
Funding, LLC, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017)).

Reiff argues that the parties' contacts with Delaware
are insufficient to support the choice-of-law provision at
issue here. (See Mem. at 11-12.) Reiff points out that CRA's
one office is located in New York, Reiff worked in New York,
no events were held in Delaware, and none of the cybersecurity
companies to which he sold events were located in Delaware.
(See id.) Reiff asserts that the parties had numerous and
prevailing contacts with New York and had no contacts with
Delaware aside from the choice-of-law provision itself and
CRA's incorporation in Delaware. (See id.)

CRA counters that Delaware has sufficient contacts with
the matter: CRA is organized under the laws of and registered
to do business in Delaware, the Bonus Agreement entered into
by Reiff also has a Delaware choice-of-law provision, the
purchase agreement underlying the acquisition that resulted
in Reiff's employment by CRA is governed by Delaware law, and
CRA actually does business in Delaware, as it has
approximately twenty customers in the state. (See Opp'n at
10-12.)

Courts are divided as to whether the state of incorporation of one of two parties to a contract, alone, is sufficient to create a reasonable relationship, but this Court is persuaded to follow precedent finding that fact alone dispositive. See, e.g., EMA Fin., LLC v. NFusz, Inc., 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020)[1]; Power Up Lending Grp., Ltd. v. Danco Painting, LLC, No. 15-CV-4537, 2016 WL 5362558, at *4 (E.D.N.Y. Aug. 10, 2016) ("As Plaintiff is a Virginia corporation and the parties agreed to apply the state's laws, the Court finds sufficient contacts with the state of Virginia."); Palermo v. JusLaw LLC, No. 24-CV-08671, 2025 WL 2207874, at *4 (S.D.N.Y. Aug. 4, 2025) (applying Delaware law and upholding the choice-of-law clause).

Aside from incorporation, CRA argues that because it has additional contacts with Delaware – for example, its twenty customers located in the state – it sufficiently satisfies the standard. (See Opp'n at 11.) Reiff contends that those clients are "disproportionate" compared to CRA's "nearly 2000 qualified and active accounts" and that "[CRA] [does not]

---

[1] In a footnote, the court also explained that its ruling was "consistent with the approach set forth in the Restatement (Second) of Conflict of Laws, which states that 'parties will be held to have had a reasonable basis for their choice [of law] when [the chosen state] is that where performance by one of the parties is to take place or *where one of the parties is domiciled* or has his principal place of business.' Section 187 cmt. f (1971) (emphasis added)." EMA Fin., LLC, 444 F. Supp. 3d at 541 n.17.

link any of the clients [Reiff] serviced to Delaware."
("Reply," Dkt. No. 26 at 3.) However, because CRA can show
some additional connection to Delaware – in addition to the
case law finding incorporation alone sufficient – the Court
finds that the choice-of-law provision applied here is
reasonably related to Delaware.

    2.   <u>Public Policy</u>

Reiff bears a "heavy burden" to show that the application
of Delaware law to adjudicate the underlying dispute would
violate New York public policy. <u>See</u> <u>Cambridge</u>, 675 F. Supp.
3d at 419. "It is not sufficient to show that application of
Delaware law would violate individual notions of expediency
and fairness or that the foreign law is unreasonable or
unwise." <u>Id.</u> (internal quotation marks omitted). Instead, a
party "must show that enforcement would result in approval of
[a] transaction that is inherently vicious, wicked or
immoral, and shocking to prevailing moral senses." <u>Id.</u>
(internal quotation marks omitted).

Here, Reiff argues that enforcement of a non-compete
against an employee fired without cause is against New York's
public policy. (<u>See</u> Mem. at 13.) Reiff cites a New York Court
of Appeals decision holding that a forfeiture of benefits
when a former employee, discharged without cause, competed

with his former employer was "unconscionable," <u>Post v. Merrill Lynch</u>, 421 N.Y.S.2d 847 (N.Y. 1979), and points to a 2021 case reaffirming the same principle, <u>King v. Marsh & McLennan Agency LLC</u>, 191 A.D.3d 507 (1st Dep't 2021). (<u>See id.</u> at 12-13.) However, as CRA notes, the <u>Post</u> holding is limited to situations in which an employer terminates an employee without cause but conditions the receipt of post-employment *benefits* on the employee's compliance with restrictive covenants. <u>See</u>, <u>e.g.</u>, <u>Davis v. Marshall & Sterling, Inc.</u>, 217 A.D.3d 1073, 1075 (3d Dep't 2023). As courts in this district have explained, <u>Post</u> does not "stand for the proposition that no form of restrictive covenant is enforceable following a termination without cause." <u>Kelley-Hilton v. Sterling Infosystems Inc.</u>, 426 F. Supp. 3d 49, 58-59 (S.D.N.Y. 2019). "[That] reading ignores the context and issue in <u>Post</u> - receipt of postemployment benefits that the employer was contractually bound to give its former employee." <u>Id.</u> In other situations in which an employee is terminated without cause, "a standard reasonableness analysis applies to any restrictive covenant." <u>Id.</u>

Here, most importantly, Reiff does not otherwise identify a genuine conflict of law that would warrant overriding the plain language of the governing contract. To

the contrary, the facts of this case are similar to those in Morplay Management Inc. v. Castro, where the court found that there were no "countervailing public policy concerns" because the defendant did "not identify a true conflict [between New York and Florida law]." No. 654566/2020, 2022 WL 376983, at *3 (N.Y. Sup. Ct. Feb. 07, 2022). Here, the requirements to enforce a restrictive covenant do not differ materially under New York and Delaware law. In New York, "a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." See, e.g., Reed, Roberts Assocs., Inc. v. Strauman, 40 N.Y.2d 303, 307 (1976). Likewise, in Delaware, "a covenant not to compete must: (1) be reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities in order to be enforceable." See, e.g., Lyons Ins. Agency, Inc. v. Wilson, No. CV-2017-0092, 2018 WL 4677606, at *5 (Del. Ch. Sept. 28, 2018). Therefore, no true conflict exists, and the application of Delaware law does not violate New York's fundamental public policy.

12

B.    <u>Likelihood of Success on the Merits</u>

As stated, under Delaware law, a covenant not to compete must be "(1) be reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities in order to be enforceable." <u>Concord Steel, Inc. v. Wilmington Steel Processing Co.</u>, No. Civ. A. 3369, 2008 WL 902406, at *4 (Del. Ch. Apr. 3, 2008).

Reiff argues that the non-compete does not seek to advance a legitimate economic interest, as he "has no confidential information in his possession that [CRA] created" and "the names of people working in the marketing departments of cybersecurity companies are public to anyone willing to perform some LinkedIn and internet searching." (Mem. at 15-16.) Reiff additionally claims that the company would still be "just as capable of holding events and selling them to cybersecurity providers as before." (<u>Id.</u> at 16.)

CRA counters that "even if customer lists are publicly available . . . 'the identities of individual contact people' at customers' companies can be 'protectable trade secrets.'" <u>North Atl. Instruments, Inc. v. Haber</u>, 188 F.3d 38, 44 (2d Cir. 1999); (Opp'n at 16). Furthermore, CRA contends that courts have found longer restrictive covenants reasonable,

see, e.g., BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 393 (1999)
(holding 18-month covenant reasonable), and that
"[p]reventing [Reiff] from working for a competitor or
customer of CRA for one year after his separation from CRA,
or from selling competing products or services, is necessary
to prevent [Reiff's] solicitation of CRA's customers." (Opp'n
at 16.)

In 2024, the Delaware Supreme Court shed more light on
the state's non-compete standard, holding in Sunder Energy,
LLC v. Jackson, that the restrictive covenants at issue were
"exceptionally broad" and that "no apparent effort was made
to tailor the provisions to [plaintiff's] legitimate
interests." 332 A.3d 472, 489-90 (Del. 2024). In Sunder
Energy, the restrictions at issue prevented the defendant and
"his 'affiliates' from being employed in any sales job in at
least forty-six states without regard to whether the employer
competed with [plaintiff] or sold similar products" – which,
as written, meant that the defendant's daughter could not "go
door to door selling Girl Scout cookies." Id. The covenants
also prevented defendant "from participating in any business
that sells to any homeowner in the states where [the
plaintiff] did business" and contained language rendering the
"two-year period" "potentially indefinite." Id.

The language in Reiff's contract dictates, in part, that Reiff cannot "[e]ngage in, accept employment with, work in any office or position with, or provide or perform services to, any Competing Business within the United States" for a period of twelve months. (Emp. Agreement at 6-7.) CRA argues that the term "Competing Business" is "narrowly defined to apply only to specific parts of the cybersecurity industry which accounts for a very small segment" of the industry. (Opp'n at 5.) CRA also contends that the provision "does not restrict [Reiff] from using his extensive experience in sales, particularly in the business-to-business trade show market, to earn a living . . . [but] simply restricts him from competing against CRA in the cybersecurity industry." (Id. at 17.)

While it is true that the restrictive covenants at issue here are distinguishable from those that the court analyzed in Sunder Energy – specifically, they cover only competing businesses and span a shorter twelve-month period – this Court still finds CRA's arguments unpersuasive, as recent Delaware law disfavors non-competes in similar circumstances. See, e.g., Payscale Inc. v. Norman, No. 2025-0118, 2025 WL 1622341, at *4 (Del. Ch. June 9, 2025) (finding that where "an employer provides an employee only minimal consideration

to secure a noncompete, [courts] ha[ve] found a nationwide scope overbroad"); Centurion Serv. Gp., LLC v. Wilensky, No. CV 2023-0422, 2023 WL 5624156, at *5 (Del. Ch. Aug. 31, 2023) (finding the nationwide scope of a non-compete overbroad, noting the consideration received was minimal where the employee agreed to the non-compete "when he was already employed by [the employer]"); FP UC Hldgs., LLC v. Hamilton, No. CV 2019-1029, 2020 WL 1492783, at *7 (Del. Ch. Mar. 27, 2020) (finding the nationwide scope of a non-compete overbroad where the employee did not receive "substantial consideration in exchange for his commitment not to work in [the employer's] industry anywhere in the United States").

Accordingly, in light of this recent Delaware case law, and the principle that non-compete agreements "are subject to somewhat greater scrutiny when contained in an employment contract as opposed to contracts for the sale of a business," Faw, Casson & Co. v. Cranston, 375 A.2d 463, 465 (Del. Ch. 1977), this Court is satisfied that, at this stage, Reiff has shown a substantial likelihood of success on the merits. See JLM Couture, Inc., 91 F.4th at 105 (2d Cir. 2024).

C.    Irreparable Harm

Although Reiff puts forward sufficient evidence supporting the likelihood of success on the merits, he fails

16

to show why, without the granting of an injunction, he would experience irreparable harm. "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." <u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted). "The injury must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir. 1989); <u>see also</u> <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 79 (2d Cir. 1990) ("Where money damages are adequate compensation a preliminary injunction should not issue.").

Reiff alleges that he has no way of obtaining compensation for the lost business opportunities that would accrue from the time it would take to adjudicate the issue in the ordinary course. (<u>See</u> Mem. at 6.) Reiff has worked for the last fourteen years in what he states is a "narrow and discrete industry" which makes him "ill-suited to other employment" and impacts his ability to "provide for himself

and his family." (Id. at 5.) Reiff claims the non-compete is leading to deteriorating relationships and asserts that most cybersecurity events, crucial in his line of work, are booked in the coming weeks, which makes it necessary that he work during this time. (Id.) Reiff also contends that loss of business opportunities can be impossible to quantify, and courts have given weight to similar circumstances – specifically when the former employee works in a narrow and specialized industry. (Id. at 6.) Reiff asserts that his work selling conference events did not involve any trade secrets, that the identity of decision-makers in the marketing departments of cybersecurity companies is a matter of public knowledge, and that he developed his relationships with those individuals through his own efforts. (Id. at 4.)

Reiff relies, in part, on Ticor Title Ins. Co. v. Cohen for the proposition that "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." 173 F.3d 63, 69 (2d Cir. 1999); (Mem. at 7). Ticor, however, presented a factual prospect opposite to what prevails in this case: the Second Circuit affirmed the lower court's

issuance of a preliminary injunction against a defendant
*employee* and held that the restrictive covenant between the
parties was valid and reasonable. Id. at 73. Furthermore,
even if the case could stand for the proposition that an
employer *or* an employee's loss of a client constitutes
irreparable harm, the court placed special emphasis on the
consideration that "the employment contract sought to be
enforced concede[d] that in the event of [the employee's]
breach of the post-employment competition provision, [the
company] shall be entitled to injunctive relief, because it
would cause irreparable injury." Id. at 69. The court
concluded that the contractual provision "might arguably be
viewed as an admission by [the employee] that [the employer]
[would] suffer irreparable harm were he to breach the
contract's non-compete provision." Id. Here, the Employment
Agreement includes similar language: "CRA . . . shall be
entitled to obtain equitable relief in the form of . . . a
temporary or permanent injunction" as a remedy for an
employee's contractual violation. (See Emp. Agreement at 7.)

CRA relies on a separate Second Circuit case for the
proposition that "[d]ifficulty in obtaining a job is
undoubtedly an injury, but it is not an irreparable one."
Hyde v. KLS Pro. Advisors Grp., LLC, 500 F. App'x 24, 26 (2d

Cir. 2012); (Opp'n at 19). The Hyde Court vacated a preliminary injunction, finding that the employee failed to establish irreparable harm. Id. The court acknowledged that the employee "reference[d] his conversations with twenty or twenty-five of his former clients, who . . . expressed a desire that he continue to manage their assets," but that even if he "had a legally protected interest in continuing to serve these clients, [he] presented no evidence that this loss . . . could not be remedied adequately by monetary damages." Id. Here, Reiff's arguments suffer from a similar flaw – and even if Reiff's booking and relationship opportunities are stronger in the fall season, Reiff has not demonstrated that any alleged injury "cannot be remedied if [the Court] waits until the end of trial to resolve the harm." Freedom Holdings, 408 F.3d at 114 (internal quotation marks and citation omitted).

Accordingly, Reiff fails to sufficiently establish irreparable harm and thus the Court's issuance of a preliminary injunction to provide him the relief he seeks is unwarranted.[2]

---

[2] Because Reiff fails to satisfy the irreparable harm prong of the analysis – which he must do to obtain a preliminary injunction – the Court declines to determine whether the injunction would serve the public interest. See Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) ("A showing of irreparable harm is the single most

### IV.  <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 11) filed by plaintiff

Alex Reiff for a preliminary injunction is **DENIED**.


**SO ORDERED.**

Dated:      29 October 2025
            New York, New York

_____
            Victor Marrero
            U.S.D.J.

---

important prerequisite for the issuance of a preliminary injunction.")
(internal quotation marks and citation omitted).